## CODDINGTON v. PROPFE.

(Circuit Court, E. D. Pennsylvania. February 6, 1901.)

1. PATENTS—INFRINGEMENT.

Patent No. 307,746, claim 1, as to sealing wax composed of certain designated substances and finely-ground fibrous material, held infringed by the Propfe patent, No. 636,922, claiming a sealing wax composed of certain named substances and "fibers of asbestos wool."

2. SAME—CLAIMS FOR FUNCTIONS.

In patent No. 303,984, for improvements in machinery for manufacturing wax tapers and coated strings, the first class of claims are claims for functions, and void.

3. SAME—ANTICIPATION.

Patent No. 303,984, for improvements in machinery for manufacturing wax tapers, as to the first class of claims held anticipated in view of McPhetridge patent, No. 16,211.

4. SAME—RESTRICTION.

Patent No. 303,984, for improvements in machinery for manufacturing wax tapers, is, as to the second class of claims, unless they are restricted to the precise combination, anticipated by prior patents.

5. SAME.

Patent No. 303,984, for improvements in machinery for manufacturing wax tapers, held not infringed.

E. Hayward Fairbanks, for complainant.
Hector T. Fenton, for respondent.

J. B. McPHERSON, District Judge. The defendant is charged with infringing two letters patent,—one being No. 307,746, issued November 11, 1884, for improvements in composition for sealing wax; and the other being No. 303,984, issued August 26, 1884, for improvements in machinery for manufacturing wax tapers and coated strings. The defenses are want of novelty and noninfringement.

Patent No. 307,746 has two claims, but only the first is involved in this suit. The claim is as follows:

"A sealing wax consisting of resin, oil, or oily substance or substances, and finely-ground fibrous material, substantially as and for the purposes specified."

The specification describes the composition fully, and explains the purposes for which it is to be used.

"The object of my invention is to produce a sealing wax which shall possess to a large extent the qualities of wax composed largely of beeswax, but which shall be more tenacious, and much cheaper. This wax is especially applicable to sealing cans containing fruit, vegetables, meat, and the like; and in this connection I prefer to employ it in the form of waxed strings, prepared by a machine, which is also my invention, and which forms the subject for separate letters patent. This wax may, however, if desired, be employed in the usual manner for sealing cans. The wax consists of a composition of resin, oil, or tallow, or other oily substance or substances, and a fibrous material,—such as cotton or hemp fiber, asbestus, or agatite finely ground,—and mixed for ordinary purposes in the proportion of sixteen parts resin, one to two parts tallow or oil, and two parts of the fibrous material. The resin and tallow are first well mixed, after which the fibrous material is added, and the whole thoroughly mixed, and the mixture is then poured out into molds of any desired size and shape, and allowed to cool, when it is ready for use.

"If the wax is to be used in the manner most common for sealing cans, it is molded into sticks, in which shape it is placed in the market; but if it is to be used in the form of waxed strings, as above mentioned, the strings are properly coated with the wax while it is in a molten or liquid state, and allowed to harden on the strings.

"The resin which I preferably employ is that known as 'pine-tree resin,' and the preferred grades are E and F. For the lower grades a greater amount of oil or tallow or other oily substance will be required. The objection to the lower grades of resin is that they make a dark-colored wax, which is not so handsome or salable as the lighter-colored wax made from the higher grades of resin.

"The preferred description of oil or oily substance or substances which enter as an ingredient or ingredients into the above-described composition are what are known as 'nondriers,' and of these nondriers the preferred are such as tallow, lard, paraffin oil, and cotton-seed oil.

"The precise portion of resin or oil may be somewhat varied in case it is desired to make the wax harder or softer. By increasing the proportion of resin, the wax is made harder, and by increasing the proportion of oil it is made softer, and it may thus be made of any desired degree of hardness. The fibrous material employed imparts to the wax a very tough and tenacious property, which causes it to adhere very firmly to the can, and prevents it from being drawn in by the cooling of the contents of the can."

The defendant's composition, for which he has also obtained a patent,—No. 636,922, applied for since this suit was brought, and issued November 14, 1899,—is composed of "resin, an oily substance, fibers of asbestus wool, and stearic acid." Some effort was made to sustain the defense of noninfringement by asserting, in the language of the defendant's specification, that the stearic acid has "a chemical effect apparently upon the resin, tallow, and asbestus fiber, particularly the former, which gives a resultant composition having properties peculiarly its own, and which is well adapted to the coating of strings for the purpose hereinbefore stated"; but the effort did not pass beyond the stage of mere assertion. It is true that the defendant repeated in his testimony the words just quoted, but obviously this repetition added nothing of value. So far as appears, no chemist has examined or analyzed the composition, and the defendant is not qualified to give expert testimony upon the subject. Stearic acid is a fatty or oily substance, and there is no evidence that would justify me in finding that it behaves otherwise

in his composition than tallow or lard would behave. There is a clear infringement, therefore, of complainant's first claim, unless "fibers of asbestus wool" differ materially from "finely-ground fibrous material." As it seems to me, after an inspection of the two substances, there is no such difference in fact, whatever may be the apparent difference in the language used to describe them. Nothing more is needed to show their practical identity than to compare specimens of the two materials. Both are finely divided powders, scarcely differing in any respect save in color, and certainly not in the size of their respective particles. It conveys a wrong impression to speak of "fibers of asbestus wool," as if the minute particles of this substance resembled the fibers or strands of animal hair or wool. It is a powder merely, and, as the defendant uses it, is already as fine as if it had been finely ground. The purpose of such material is to act as a binder to make the wax tough and tenacious, and not to act chemically upon the resin and the tallow, or other oily substance. I am, therefore, of the opinion that the defendant's composition infringes the first claim of the complainant's patent No. 307,746. And, without discussing the two patents set up as anticipations, I am also of opinion that neither is effective for this purpose,—the Burbridge patent, because its fibrous material is not to be finely ground; and the Waterous patent, because steatite does not appear to be a fibrous material.

To the patent for the machine, however, I think the defense of noninfringement is good. The complainant's machine belongs to the class described in McCormick v. Talcott, 20 How. 405, 15 L. Ed. 931, in the following passage:

"If he be the original inventor of the device or machine called the 'divider,' he will have a right to treat as infringers all who make dividers operating on the same principle, and performing the same functions by analogous means or equivalent combinations, even though the infringing machine may be an improvement of the original, and patentable as such. But, if the invention claimed be itself but an improvement on a known machine by a mere change of form or combination of parts, the patentee cannot treat another as an infringer who has improved the original machine by use of a different form or combination performing the same functions. The inventor of the first improvement cannot invoke the doctrine of equivalents to suppress all other improvements which are not mere colorable invasions of the first."

The machine is designed "rapidly and cheaply [to] produce waxed strings or tapers for sealing fruit jars, or for lighting purposes. It has special reference, however, in the present instance, to the manufacture of waxed strings for sealing fruit jars." The claims said to be infringed are seven in number and fall into three classes; the first class being:

"(1) A machine for manufacturing waxed strings or tapers, by the aid of which machine said strings are waxed and automatically cut to the required length, substantially as and for the purposes specified."

"(22) The combination of mechanism, substantially as described, for coating strings with wax, and mechanism for automatically cutting the strings into the desired lengths after being coated, substantially as and for the purposes specified."

The second class being:

"(2) A machine for coating strings with wax, consisting of a pan, B, in which to melt the wax, and mechanism, substantially as described, for re-

taining the strings in said pan, and drawing them horizontally through the same, substantially as and for the purposes specified."

"(4) The combination of a vessel for holding the melted cord-coating material, staples or guiding devices having openings, $b^1$ and $b^2$, and means for drawing the strings through the staples or guides, $b^1$, $b^2$, substantially as and for the purposes specified."

"(6) In a device for coating the cord or strings, the combination of the extended shallow pan for holding the liquid cord-coating material and devices for keeping the cord near or at the bottom of said pan while being drawn through said pan, substantially as and for the purposes specified."

And the third class being:

"(14) In a machine for coating strings, the roller, C, provided with a porous exterior, substantially as and for the purposes specified."

"(3) The combination of the vessel for holding the cord-coating material, devices for immersing the cord therein, drum or roller, C, and feed rollers, d and $d^1$, all supported in an appropriate frame, and mechanism, substantially as described, for causing said rollers to revolve, substantially as and for the purposes specified."

Concerning the first class, it is enough to say that these are either claims for functions, and therefore void, or else they are claims for the particular device described in the specification, and need not be separately considered. As broad claims for the device, I think they cannot be sustained, in view of the patent to McPhetridge, No. 16,211, dated December 9, 1856, and perhaps also in view of other prior patents cited by the defendant.

The second class are claims for a combination consisting of a waxing pan, the staples or guiding devices therein for keeping the strings submerged in the wax, a revolving and grooved roller or drum covered with cloth or other soft porous material, a pair of geared feed rollers, and mechanism for causing the rotation of the drum and the feed rollers. Unless these claims be restricted to the precise combination claimed, they cannot be sustained, for prior patents show a waxing pan, guiding devices therein, and a pair of geared feed rollers to draw the material from and through the waxing pan. The thirteenth, fourteenth, fifteenth, and sixteenth paragraphs in defendant's statement of facts (with a slight change) are, I think, undoubtedly true:

"(13) It was not new with Coddington to provide machinery or mechanical apparatus to cover wick or strings with a waxing or coating composition, and to cut off the same in definite lengths; the ancient wax tapers and wax matches having been so made.

"(14) It was not new with Coddington to provide a mechanical structure to deliver sheets of paper or a series of cords or wicks to a waxing or coating pan, means to keep the cords submerged therein, means to strip off the surplus coating, driven rollers to draw the paper or cords from the waxing pan, and means to wind up the waxed paper or cord, or to deliver it to other devices for further treatment.

"(15) The prior patents to Bancroft of 1882, Page of 1881, Montgomery of 1849, and McPhetridge of 1856, each show and describe some or all of this mechanism, substantially as stated in the preceding paragraph.

"(16) It was not new with Coddington to provide, in a single apparatus or machine, mechanisms operating automatically and in unison, whereby a string was fed forward, coated with wax or like composition, cooled, drawn forward by driven rollers, delivered to cutting devices, and cut off in definite lengths, in one continuous operation; such a machine or apparatus being described in prior McPhetridge United States patent of 1856."

A prominent feature of the third class of claims is the roller provided with a porous exterior. The specification further describes the drum or roller as follows:

"This drum is covered with cloth, which is kept constantly moistened by water from the trough, the preferred means of conveying water from the trough to the drum being a strip of cloth, one edge of which is in the trough and the other edge resting on the drum. This strip acts on the principle of a syphon, and keeps the cloth on the drum moist, and the strings are thus drawn between two moistened surfaces, and are thus cooled and moistened."

In claim 15 the same language is used as in claim 14, except that the word "soft" is inserted before the word "porous." I agree with the defendant's expert in believing that the difference between these two claims is immaterial. To use his language:

"While the specification describes cloth as the 'porous' covering of the drum, the absence of the word 'soft' of claim 15 from the otherwise identical claim 14 in question would indicate that some other covering than cloth could be substituted; but, as both the claims use the word 'porous,' and as the specification describes that the function of the covering is primarily to absorb water from the superposed trough, and give it up to the coated string passing over the drum, it is obvious that no covering which will not perform these functions is the 'porous' or 'soft porous' material of the patent. * * * I do not think, therefore, that the thing referred to in the claim 14 in question is merely a drum per se covered with soft material, nor a drum covered with a porous, water-absorbing material, but is a drum capable of absorbing and giving off water when arranged in proper combination with, or rather in relation to, a water trough delivering water thereto, and also when arranged to operate as a guiding device, and hence grooved, and with means to revolve said drum."

It is sufficient to add that there is no such drum in the defendant's machine. The device that is supposed to correspond is thus correctly described in the brief of defendant's counsel:

"These rollers are merely guide rollers. They are free to revolve, but are not driven. They are nothing but plain, wooden, uncovered rollers. Their obvious function is to guide the string to and through the water in the cooling pan marked 'D.' They are in no sense drawing rollers. They are not cooling rollers in the sense of the claim of the patent, and certainly are not rollers 'covered with a porous material.' "

The bill must be dismissed as to the patent for the machine, but sustained as to the patent for the wax. The costs will be equally divided.